UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEBARON SANDERS,

    Petitioner,

    v.

JERRY HOWELL, *et al.*,

    Respondents.

Case No. 2:14-cv-01966-JCM-NJK

ORDER

Introduction

This action is a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Debaron Sanders, a Nevada prisoner. It is before the Court for adjudication of the claims remaining in Sanders' amended habeas petition. The Court determines that Sanders' remaining claims are without merit, and will, therefore, deny Sanders' amended petition and will deny a certificate of appealability.

Background

Sanders' convictions are the result of events that occurred in Las Vegas in the early morning of January 28, 2006. In its order on the appeal in Sanders' first state habeas corpus action, the Nevada Supreme Court described the crimes, as revealed by the evidence at Sanders' trial, as follows:

> The jury heard testimony that Underwent Evans drove Sanders, Larry Bailey, and Gregory Boyd to a party in her car. When they arrived, they encountered the two victims and asked whether the party was over. The victims stated that the party ended after the police arrived and they were leaving the area because they were carrying guns. The victims walked away and Sanders, Bailey, and Boyd got back into Evans' car. Boyd suggested that they should rob the victims of their guns. Evans had given Bailey the keys to her car, so Sanders, Bailey, and Boyd used her car to pursue the victims. Bailey drove past the victims and parked the car ahead of their direction of travel. As the victims traveled past the parked car, Boyd and Sanders got out and shot at the victims as they ran away. Bailey urged Boyd and Sanders to get back in the car and then drove to the Denny's restaurant where they were apprehended. Sanders testified

1

that Bailey was the getaway driver for the robbery and admitted that he
fired eight rounds at the back of a victim who was running away.

Order of Affirmance, Exhibit 114, p. 2 (ECF No. 18-10, p. 3). One of the two victims was killed; the other was shot, but survived, and testified at Sanders' jury trial.

Following a jury trial, Sanders was convicted of conspiracy to commit robbery, two counts of attempted robbery with the use of a deadly weapon, conspiracy to commit murder, murder with the use of a deadly weapon, and attempted murder with the use of a deadly weapon. *See* Judgment of Conviction, Exhibit 63 (ECF No. 16-11). He was sentenced to: 24 to 60 months in prison for the conspiracy to commit robbery; a concurrent term of 24 to 60 months for the first count of attempted robbery, plus another 24 to 60 months for use of the deadly weapon; a concurrent term of 24 to 60 months for the second count of attempted robbery, plus another 24 to 60 months for use of the deadly weapon; a concurrent term of 36 to 120 months for the conspiracy to commit murder; a concurrent term of life in prison with the possibility of parole after 20 years, for the murder, plus another term of life in prison with the possibility of parole after 20 years, for the use of the deadly weapon; and a consecutive term of 54 to 240 months for the attempted murder, plus another 54 to 240 months for use of the deadly weapon. *See id.* In essence, Sanders' was sentenced to serve a minimum of 49 years, and a maximum of life in prison. The judgment of conviction was filed July 28, 2009. *See id.*

Sanders did not file a timely notice of appeal from the judgment of conviction. On September 17, 2009, Sanders' counsel filed a "Motion to Notify Defendant of the Judgment of Conviction," arguing that he did not receive notice of the entry of the judgment and seeking to restart the time to file a notice of appeal. *See* Motion to Notify Defendant of the Judgment of Conviction, Exhibit 64 (ECF No. 16-12). The state district court granted that motion. *See* Reporter's Transcript, October 13, 2009, Exhibit 68, pp. 3-4 (ECF No. 16-16, pp. 4-5). Sanders then filed a notice of appeal on October 16, 2009. *See* Notice of Appeal, Exhibit 69 (ECF No. 16-17). However, on January 7, 2010, the Nevada Supreme Court dismissed that appeal as untimely filed. *See* Order Dismissing Appeal, Exhibit 75 (ECF No. 16-23).

On July 28, 2010, with court-appointed counsel, Sanders filed his first state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 82 (ECF No. 17-4). The state district court ruled that Sanders asserted a viable claim that he was deprived of a timely direct appeal due to ineffective assistance of counsel and permitted Sanders to assert his direct appeal claims. *See* Order, Exhibit 96 (ECF No. 17-18). Therefore, on October 6, 2011, Sanders filed a notice of appeal to the Nevada Supreme Court and proceeded with his direct appeal claims. *See* Notice of Appeal, Exhibit 98 (ECF No. 17-20); *see also* Appellant's Opening Brief, Exhibit 110 (ECF No. 18-6); Appellant's Reply Brief, Exhibit 112 (ECF No. 18-8). On May 14, 2013, the Nevada Supreme Court affirmed the judgment of conviction. *See* Order of Affirmance, Exhibit 114 (ECF No. 18-10).

On June 18, 2014, Sanders filed a second state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 117 (ECF No. 18-13). The state district court dismissed that petition, finding that it was untimely filed. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 121 (ECF No. 18-17). Evidently, Sanders did not appeal from that ruling.

On October 8, 2015, Sanders filed a third state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 123 (ECF No. 18-19); Memorandum of Points and Authorities in Support of Writ of Habeas Corpus (Post-Conviction), Exhibit 124 (ECF No. 18-20). The state district court dismissed that petition as well. *See* Findings of Fact, Conclusions of Law and Order, Petitioner's Exhibit 1 (ECF No. 56-1). Sanders appealed, and the Nevada Supreme Court affirmed on November 18, 2016, ruling that the petition was untimely. *See* Order of Affirmance, Petitioner's Exhibit 3 (ECF No. 56-3).

On June 19, 2017, Sanders filed a fourth state habeas action. *See* Petition for Post-Conviction Writ of Habeas Corpus, Petitioner's Exhibit 9 (ECF No. 56-9). The state district court dismissed that petition on February 15, 2018, ruling that it was untimely

and successive. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 130 (ECF No. 58-5). It appears that Sanders' appeal from that ruling remains pending.

Sanders initiated this federal habeas corpus action on November 25, 2014. The Court appointed counsel for Sanders, and on March 8, 2018, with counsel, Sanders filed an amended petition for writ of habeas corpus (ECF No. 56). In the amended petition, Sanders asserts the following claims:

> 1. Sanders' federal constitutional rights were violated because the trial court erred in denying Sanders' motion to suppress his confession. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. 17-25.
>
> 2. Sanders' federal constitutional rights were violated because the trial court erred in rejecting Sanders' challenge to the prosecution's use of a peremptory challenge to strike an African-American juror. *See id.* at 26-35.
>
> 3. Sanders' federal constitutional rights were violated because the trial court denied Sanders' request for a jury instruction on voluntary manslaughter. *See id.* at 36-43.
>
> 4. Sanders' federal constitutional rights were violated because the State presented insufficient evidence to convict Sanders of conspiracy to commit robbery, attempted robbery with use of a deadly weapon, and conspiracy to commit murder. *See id.* at 44-49.
>
> 5. Sanders' federal constitutional rights were violated because of the cumulative effect of the errors asserted in Claims 1 through 4. *See id.* at 49-50.
>
> 6. Sanders' federal constitutional rights were violated because of ineffective assistance of his trial counsel, which allowed the State to proceed on conflicting theories in Sanders' trial and the trial of a co-defendant. *See id.* at 51-58.
>
> 7. Sanders' federal constitutional rights were violated because the prosecution committed misconduct in proceeding on conflicting theories in Sanders' trial and the trial of a co-defendant. *See id.* at 59-65.
>
> 8. Sanders' federal constitutional rights were violated because of ineffective assistance of his trial counsel, on account of his trial counsel's failure to offer a jury instruction regarding character and failure to prepare and present character witnesses at trial. *See id.* at 66-69.
>
> 9. Sanders' sentence violates his federal constitutional rights. *See id.* at 70-86.
>
> 10. Sanders' federal constitutional rights were violated because of ineffective assistance of his trial counsel, on account of his trial counsel's failure to prepare him to testify at trial. *See id.* at 87-88.

4

11. Sanders' federal constitutional rights were violated because of ineffective assistance of his trial counsel, on account of his trial counsel's failure to seek juvenile status for Sanders prior to trial. *See id.* at 88-90.

Respondents filed a motion to dismiss the amended petition on May 7, 2018 (ECF No. 57), contending that all of Sanders' claims are barred by the statute of limitations, that certain of his claims are unexhausted, that certain of his claims are barred by the procedural default doctrine, and that certain of his claims are not cognizable in this federal habeas action. The Court granted the motion to dismiss in part and denied it in part; dismissed Claims 6, 7, 8, 9, 10 and 11 on statute of limitations grounds; and set a schedule for further proceedings relative to Claims 1, 2, 3, 4 and 5. *See* Order entered June 15, 2018 (ECF No. 61).

The respondents then filed an answer (ECF No. 64) on September 13, 2018, responding to Claims 1, 2, 3, 4 and 5. Sanders did not file a reply.

Discussion

Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts

a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

Section 2254(d) generally applies to unexplained as well as reasoned state-court decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. When the state court has denied a federal constitutional claim on the merits without explanation, the federal habeas court "must determine what

arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

Claim 1

In Claim 1 of his amended habeas petition, Sanders claims that his federal constitutional rights were violated because the trial court erred in denying his motion to suppress his confession. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. 17-25.

Sanders asserted this claim in state court, and the Nevada Supreme Court ruled on it as follows:

> Sanders contends that the district court erred by denying his pretrial motion to suppress his confession because it was not freely and voluntarily given. He claims that because of the length of his detention, food and sleep deprivation, his youth and lack of education, and the detective's use of religious coercion, his will was overborne by the police interrogation.
>
> "A confession is admissible only if it is made freely and voluntarily, without compulsion or inducement." *Passama v. State*, [103 Nev. 212, 213, 735 P.2d 321, 322 (1987).] "The question of the admissibility of a confession is primarily a factual question addressed to the district court: where that determination is supported by substantial evidence, it should not be disturbed on appeal." *Chambers v. State*, 113 Nev. 974, 981, 944 P.2d 805, 809 (1997). In determining whether a confession was made voluntarily, the court looks to the totality of the circumstances, considering "the youth of the accused; his lack of education or low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Passama*, 103 Nev. at 214, 735 P.2d at 323.
>
> The district court conducted a suppression hearing, denied the motion, and made the following factual findings on the record: (1) Sanders was bright and articulate and did not have any deficiencies based on youth that would justify suppressing the statement; (2) the uncontroverted evidence was that God was not mentioned at all during the interview; (3) the detective did not go out of his way to show the cross that was embossed on his notebook or discuss its importance during the interview; (4) the length of Sanders' detention did not raise concerns; (5) Sanders was not subjected to repeated questioning and the interview lasted for about 20 minutes; and (6) Sanders "may have been up for some long period of time, but it wasn't that the state agents kept him up forever then tried to question him, or any other things that would ... justify the

7

suppression of the confession." The district court's conclusion that Sanders' confession was voluntary is supported by substantial evidence and is not clearly wrong. Accordingly, Sanders has failed to demonstrate error in this regard.

Order of Affirmance, Exhibit 114, pp. 3-4 (ECF No. 18-10, pp. 4-5).

The admission into evidence, at trial, of an involuntary confession violates a defendant's right to due process under the Fourteenth Amendment. *Lego v. Twomey*, 404 U.S. 477, 478 (1972); *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). "A confession is involuntary if it is not 'the product of a rational intellect and a free will.'" *Brown*, 644 F.3d at 979 (quoting *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989)). To determine whether a confession was involuntary, a court must consider the totality of the circumstances. *See Withrow v. Williams*, 507 U.S. 680, 693 (1993); *Taylor v. Maddox*, 366 F.3d 992, 1015 (9th Cir. 2004), abrogated in part on other grounds, *Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014). The circumstances the court is to consider include: the length, location, and continuity of the interrogation; the defendant's maturity, education, physical condition, and mental health; whether the defendant was advised of his rights; and whether counsel was present. *See Withrow*, 507 U.S. at 693; *Taylor*, 366 F.3d at 1015.

The defense filed a pretrial motion to suppress Sanders' statement. *See* Motion to Suppress, Exhibit 14 (ECF No. 14-14); *see also* State's Opposition to Motion to Suppress, Exhibit 18 (ECF No. 14-18). The trial court conducted a hearing regarding that motion, at which the police officer who took Sanders' statement testified. *See* Reporter's Transcript, May 14, 2009, Exhibit 47 (ECF No. 15-21). The trial court denied the motion to suppress and Sanders' statement was introduced into evidence at trial.

The Court has examined the record relevant to this issue, including, most importantly, the transcript of Sanders' statement (attached to State's Opposition to Motion to Suppress, Exhibit 18 (ECF No. 14-18, pp. 21-46)), and the transcript of the hearing at which the trial court took testimony of the questioning officer (Reporter's Transcript, May 14, 2009, Exhibit 47 (ECF No. 15-21)). The Court determines that the state courts reasonably concluded that Sanders' statement to the police was voluntary.

8

At the time of the murder, and when Sanders gave his statement to the police, Sanders was 18 years old. He was an adult, albeit a young adult, and there is no indication that his age rendered his statement involuntary. There is also no indication that Sanders is of low intelligence, or that he had any difficulty understanding the questions asked of him. Before the questioning began, Sanders was advised of his constitutional rights, pursuant the rule of *Miranda v. Arizona*, 384 U.S. 436 (1966). There was nothing about the length of Sanders' detention before giving his statement, or about the length of the interview itself, that could reasonably be viewed as undermining the voluntariness of the statement. There is no indication that Sanders had been deprived of food or water, or sleep. Sanders has not shown that the questioning officer used religion in any way to overcome Sanders' will, such as to render the statement involuntary. In short, considering the totality of the circumstances, Sanders does not show that his statement to the police was involuntary.

The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny Sanders habeas corpus relief with respect to Claim 1.

Claim 2

In Claim 2, Sanders claims that his federal constitutional rights were violated because the trial court erred in rejecting his challenge to the prosecution's use of a peremptory challenge to strike an African-American juror. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. 26-35.

Sanders asserted this claim in state court, and the Nevada Supreme Court ruled as follows:

> Sanders contends that the district court erred by rejecting his *Batson* challenge to the State's use of a peremptory challenge to remove an African-American woman from the venire. *See Batson v. Kentucky*, 476 U.S. 79 (1986). He claims that the State's disparate questioning of the venire and implausible explanations for striking juror 210 demonstrated purposeful discrimination and the district court's decision to grant the

State's peremptory challenge deprived him of a fair trial by an impartial jury.

A *Batson* challenge requires the district court to employ a three-step analysis:

> (1) the opponent of the peremptory challenge must make out a prima facie case of discrimination, (2) the production burden then shifts to the proponent of the challenge to assert a neutral explanation for the challenge, and (3) the trial court must then decide whether the opponent of the challenge has proved purposeful discrimination.

*Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006). Circumstantial evidence may be relevant in determining whether the reasons offered for the peremptory challenge of a minority prospective juror are pretext for discrimination. *Id.* at 405, 132 P.3d at 578-79 (discussing factors to be considered when determining whether a prosecutor's reasons for a peremptory challenge are pretextual). "The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Walker v. State*, 113 Nev. 853, 867-68, 944 P.2d 762, 771-72 (1997) (internal quotation marks omitted).

Sanders objected to the State's peremptory challenge of juror 210 because she was the only African American on the venire. The State offered the following explanations for the challenge: (1) juror 210 did not like the way the police responded when she reported a carjacking; (2) she indicated in a visual manner that she was against the death penalty, juror 11 was also challenged when he expressed concerns about the death penalty; (3) she and juror 189 reacted in a visual manner to a comment about giving more credence to police officers than other individuals, juror 189 was also challenged; (4) she and juror 189 constantly talked to each other during voir dire, raising concerns that she might not follow the trial or would discuss the case before deliberations; and (5) she had a visual reaction to juror 209's comment about self-defense, leaned over and looked down at him, made a comment to juror 189, and then stated, "I have been in martial arts for 20 years. You have a right to defend yourself." Sanders disputed the State's explanations, stating that juror 210 affirmatively asserted that she could be fair and impartial after learning that this was not a capital case and her negative experience with law enforcement was not a race-neutral reason for striking a juror because the vast majority of African Americans have had negative experiences with law enforcement.

The district court determined that jurors 210 and 239 were the only African Americans on the venire and juror 239 was excused for cause; observed that a juror's visible reaction to questions may lead to more questions and raise concerns as to whether the juror is answering the question or meant the substance of his or her answer; and found that the State's explanations for the challenge were not singular to juror 210 and were race-neutral. Because "discriminatory intent is not inherent in the State's explanation[s]" and the explanations are not "implausible or fantastic," we conclude that the district court did not clearly err in rejecting Sanders' *Batson* challenge. *Ford*, 122 Nev. at 403, 404, 132 P.3d at 578.

Order of Affirmance, Exhibit 114, pp. 4-6 (ECF No. 18-10, pp. 5-7).

The use of a peremptory challenge to remove a prospective juror because of race violates the federal constitution. *See J.E.B. v. Alabama ex rel. T.B.* 511 U.S. 127, 129, (1994); *Powers v. Ohio* 499 U.S. 400, 409 (1991). Under *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, consideration of a defendant's challenge to a peremptory strike involves a three-step analysis. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory strike on the basis of race. *See Rice v. Collins*, 546 U.S. 333, 338 (2006). The burden then shifts to the prosecution to present a race-neutral explanation for the peremptory challenge. *See id.* It is then the defendant's burden to show that the strike was the result of purposeful racial discrimination. *See id.*

The trial court's determination regarding intentional discrimination is a question of fact. *See Flowers v. Mississippi*, 136 S. Ct. 2157, 2158 (2016); *Hernandez v. New York*, 500 U.S. 352, 364 (1991) (plurality opinion). Therefore, a habeas petitioner is entitled to relief on a *Batson* claim only if the state court's denial of the claim constituted "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see Rice*, 546 U.S. at 338. Thus, this Court can grant relief only "if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice*, 546 U.S. at 338. In addition, under 28 U.S.C. § 2254(e)(1), "[s]tate-court factual findings ... are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Id.* at 338-39. Although "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility ... on habeas review that does not suffice to supersede the trial court's credibility determination." *Id.* at 341-42.

In light of the entire record of the jury voir dire proceedings at Sanders' trial (*see* Reporter's Transcript, May 18, 2009, Exhibit 49 (ECF No. 15-23)), including the exchanges involving Juror 210 (*see id.* at 63-64, 89, 115-18, 133, 135-36, 149-50 (ECF No. 15-23, pp. 18, 25, 31-32, 36, 40)), the arguments of counsel regarding the peremptory strike of Juror 210 (*see id.* at 159-63 (ECF No. 15-23, pp. 42-43)), and the

11

findings and reasoning of the trial court (*see id.* at 163-64 (ECF No. 15-23, p. 43)), this Court cannot say that the trial court's acceptance of the prosecution's race neutral explanations for the strike of Juror 210 was unreasonable. It is apparent from the record that Juror 210 expressed opinions and exhibited behaviors – both unrelated to race – that could legitimately have concerned the prosecution.

The Nevada Supreme Court's ruling on Claim 2 was not contrary to, or an unreasonable application of, United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny Sanders habeas corpus relief with respect to Claim 2.

Claim 3

In Claim 3, Sanders claims that his federal constitutional rights were violated because the trial court denied his request for a jury instruction on voluntary manslaughter. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. 36-43.

Sanders asserted this claim in state court, and the Nevada Supreme Court ruled as follows:

> Sanders contends that the district court abused its discretion by refusing to instruct the jury on voluntary manslaughter because evidence was presented that he was scared and confused, did not know what was going on, and shot at the victims in that state of mind.
>
> "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "[A] defendant is entitled to a jury instruction on a lesser-included offense if there is any evidence at all, however slight, on any reasonable theory of the case under which the defendant might be convicted of that offense." *Rosas v. State*, 122 Nev.1258, 1264-65, 147 P.3d 1101, 1106 (2006) (internal quotation marks omitted). Voluntary manslaughter is a lesser-included offense of murder, *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983), and is described and defined by NRS 200,040, NRS 200.050, and NRS 200.060.
>
> Some evidence was presented that would justify instructing the jury on voluntary manslaughter. The jury heard testimony that the victims were believed to possess guns, the victims appeared to reach for these guns, Sanders thought the victims were going to shoot, Sanders heard shots, and Sanders was scared for his life and reacted by shooting at the victims. *See* NRS 200.050(1) (voluntary manslaughter requires "a serious and

12

> highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, *or an attempt by the person killed to commit a serious personal injury on the person killing*" (emphasis added)). Although we conclude that the district court erred by refusing to instruct the jury on voluntary manslaughter, "we are convinced beyond a reasonable doubt that the jury's verdict was not attributable to the error and that the error was harmless under the facts and circumstances of this case." *Crawford*, 121 Nev. at 756, 121 P.3d at 590.

Order of Affirmance, Exhibit 114, pp. 6-7 (ECF No. 18-10, pp. 7-8).

A state trial court's refusal to give an instruction is not under all circumstances a ground for habeas corpus relief. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must be so egregious that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). A habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 145 (1977)).

The Nevada Supreme Court's ruling on this claim focused on the question whether the failure to give the requested instruction violated state law; the court did not discuss its denial of Sanders' federal constitutional claim.

As a general matter, a federal court will not review a state court's determinations on state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).

28 U.S.C. § 2254(d) generally applies in such a situation – where the state court denies a claim without explanation. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law

13

procedural principles to the contrary." *Harrington*, 562 U.S. at 99. And, in such cases, the federal habeas court "must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

Sanders does not provide any analysis, or make any argument, in this regard; he does not acknowledge the law governing his federal constitutional claim, and he does not explain why the Nevada Supreme Court could not reasonably have found that the failure to provide the requested jury instruction did not render his trial so unfair as to violate the federal constitutional due process guarantee. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. 36-43.

The primary theory of Sanders' defense was self-defense. *See* Defense Closing Argument, Reporter's Transcript, May 21, 2009, Exhibit 54, pp. 192-215 (ECF No. 16-2, pp. 50-56). The trial court instructed the jury with respect to self-defense. *See* Jury Instructions 31-35, Exhibit 55 (ECF No. 16-3, pp. 36-40); Reporter's Transcript, May 21, 2009, Exhibit 54, pp. 149-152 (ECF No. 16-2, p. 40). Sanders did not emphasize to the jury a theory that the killing was second-degree murder rather than first-degree murder, or, importantly, that the killing was other than murder. The jury rejected Sander's claim of self-defense and found him guilty of first-degree murder. In light of the trial record, this Court determines that it was reasonable for the Nevada Supreme Court to conclude that Sanders' trial was not rendered unfair, in violation of his federal constitutional rights, because the trial court declined to give his proposed jury instructions regarding voluntary manslaughter. The Nevada Supreme Court's denial of this claim was not unreasonable. The Court will deny Sanders habeas corpus relief with respect to Claim 3.

Claim 4

In Claim 4, Sanders claims that his federal constitutional rights were violated because the State presented insufficient evidence to convict him of conspiracy to commit robbery, attempted robbery with use of a deadly weapon, and conspiracy to

commit murder. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. 44-49.

Sanders asserted this claim in state court, and the Nevada Supreme Court ruled as follows:

> Appellant Debaron Sanders contends that insufficient evidence supports his convictions for conspiracy to commit robbery, attempted robbery with the use of a deadly weapon, and conspiracy to commit murder. He specifically claims that the State failed to prove that he agreed to participate in a conspiracy and intended to rob the victims. He further asserts that the district court erred by not advising the jury to acquit him of these offenses. We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the crimes beyond a reasonable doubt. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d.571,573 (1992).
>
> The jury heard testimony that Undrewent Evans drove Sanders, Larry Bailey, and Gregory Boyd to a party in her car. When they arrived, they encountered the two victims and asked whether the party was over. The victims stated that the party ended after the police arrived and they were leaving the area because they were carrying guns. The victims walked away and Sanders, Bailey, and Boyd got back into Evans' car. Boyd suggested that they should rob the victims of their guns. Evans had given Bailey the keys to her car, so Sanders, Bailey, and Boyd used her car to pursue the victims. Bailey drove past the victims and parked the car ahead of their direction of travel. As the victims traveled past the parked car, Boyd and Sanders got out and shot at the victims as they ran away. Bailey urged Boyd and Sanders to get back in the car and then drove to the Denny's restaurant where they were apprehended. Sanders testified that Bailey was the getaway driver for the robbery and admitted that he fired eight rounds at the back of a victim who was running away.
>
> We conclude that a rational juror could reasonably infer from this evidence that Sanders conspired with others to commit robbery and murder and attempted to commit robbery with the use of a deadly weapon. *See* NRS 193.165(1); NRS 193.200; NRS 193.330(1); NRS 199.480(1); NRS 200.010; NRS 200.380(1); *Sharma v. State*, 118 Nev. 648, 659, 56 P.3d 868, 874 (2002) ("[I]ntent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial."); *Garner v. State*, 116 Nev, 770,780,6 P.3d 1013, 1020 (1998) ("Evidence of a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement and support a conspiracy conviction."), *overruled on other grounds by Sharma*, 118 Nev. at 655, 56 P.3d at 872. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71,73, 624 P.2d 20, 20 (1981).

> We further conclude that the district court acted within its discretion by not issuing an advisory verdict. *See* NRS 175.381(1); *Milton v, State*, 111 Nev. 1487, 1493, 908 P.2d 684, 688 (1995).

Order of Affirmance, Exhibit 114, pp. 1-3 (ECF No. 18-10, pp. 2-4).

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be viewed in the light most favorable to the prosecution. *See id*. Federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson. See Juan H.*, 408 F.3d at 1275 n.13.

The Court finds this claim to be without merit. There was ample evidence upon which a rational juror could have found Sanders guilty of conspiracy to commit robbery, attempted robbery with use of a deadly weapon, and conspiracy to commit murder. The evidence was clear – and Sanders does not dispute – that he, Bailey and Boyd discussed robbing the victims of their guns, and then proceeded to drive to where the victims were, confronted them, and shot them. Despite Sanders' self-serving assertion that he did not agree with the plan to rob the victims, the jury could reasonably have found, given the undisputable sequence of events, that Sanders ultimately joined the conspiracy, attempted to rob the victims, and was guilty of conspiracy to commit robbery, attempted robbery with use of a deadly weapon, and conspiracy to commit murder. The Nevada Supreme Court could reasonably have concluded as much.

The Nevada Supreme Court's ruling on Claim 4 was not contrary to, or an unreasonable application of, United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny Sanders habeas corpus relief with respect to Claim 4.

Claim 5

In Claim 5, Sanders claims that his federal constitutional rights were violated because of the cumulative effect of the errors asserted in Claims 1 through 4. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 56), pp. at 49-50.

The Court determines that Sanders shows no error in Claims 1 through 4. Therefore, there is no error to consider cumulatively as asserted in Claim 5, and Claim 5 fails. The Court will deny Sanders habeas corpus relief on Claim 5.

The Court will deny Sanders' amended petition for a writ of habeas corpus.

Certificate of Appealability

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying this standard, the Court finds that a certificate of appealability is unwarranted.

///

///

///

///

///

///

///

Conclusion

**IT IS THEREFORE ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of the Court shall substitute Jerry Howell for Brian Williams, Sr., on the docket for this case, as the respondent warden.

**IT IS FURTHER ORDERED** that the Amended Petition for Writ of Habeas Corpus (ECF No. 56) is denied.

**IT IS FURTHER ORDERED** that the petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court is to enter judgment accordingly.

DATED December 7, 2018.

                                                             JAMES C. MAHAN,
                                                           UNITED STATES DISTRICT JUDGE